UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NATHANIEL MORRICE,

        Petitioner,             Case No. 1:18-cv-1398

v.                                       Honorable Janet T. Neff

SHANE JACKSON,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Nathaniel Morrice is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan. On December 22, 2014, following a five-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of three counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c. Petitioner was acquitted of one count of disseminating sexually explicit matter to a minor, in violation of Mich. Comp. Laws § 722.675. On January 28, 2015, the court sentenced Petitioner to concurrent prison terms of 25 years to 37 years, 6 months for each CSC-I conviction and 5 years, 11 months to 15 years for the CSC-II conviction.

On December 17, 2018, Petitioner, with the assistance of counsel, filed his habeas corpus petition raising three grounds for relief, as follows:

    I.        Trial counsel committed ineffective assistance by failing to challenge [the] findings [of Dr. Stephen Guertin, the prosecution's expert witness].

      II.      Trial counsel's failure to object to significant hearsay testimony by Guertin was ineffective assistance.

      III.     Trial counsel was ineffective by failing to object to [Detective Annie] Harrison's statements vouching for [the victim's] credibility.

(Pet'r's Memo. of Law, ECF No. 1-1, PageID.5-6.) Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because Petitioner has failed to demonstrate that the state court's rejection of Petitioner's claims was objectively unreasonable. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that Petitioner has failed to satisfy his burden under the AEDPA. Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> The victim, HH, is defendant's stepdaughter. At trial, HH testified to a progression of sexual abuse by defendant that began when she was 5 years old and ended when she was aged 12. According to HH, at five years' old defendant would enter her bedroom and touch her on her vagina over her clothes. At six years' old defendant made HH perform fellatio and according to HH, she continued to do this every couple of months. HH testified that defendant first vaginally penetrated her when she was 12 years old, that "it hurt really bad," and that she started bleeding from her vagina after the assault even though she was over her menstrual period. According to HH, thereafter defendant engaged in vaginal sex with her about six times and anal sex once. HH recalled that the last time she was assaulted by defendant was in late October 2013, when she was still 12 years old.

(Mich. Ct. App. Op., ECF No. 6-19, PageID.771.) "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

During Petitioner's trial, the jurors heard from the first adult to whom the victim disclosed the abuse, three of the victim's teenage friends, the deputy who responded to the initial

complaint, the victim's mother, a pediatric care specialist who was qualified as an expert in the diagnosis and treatment of child sexual abuse, the victim, and the detective who led the investigation. Petitioner did not call any witnesses. The jurors deliberated for a few hours before returning their verdicts.

Petitioner, with the assistance of counsel, appealed his convictions to the Michigan Court of Appeals. Petitioner moved to remand for a *Ginther* hearing[1] in the trial court to develop the facts behind the ineffective assistance of trial counsel claims raised in his appellate briefs. The court of appeals denied that motion by order entered March 8, 2016. (Mich. Ct. App. Ord., ECF No. 6-19, PageID.799.) On December 8, 2016, the court of appeals issued an opinion rejecting Petitioner's claims of error and affirming his convictions.

Petitioner then, again with the assistance of counsel, filed an application for leave to appeal to the Michigan Supreme Court. By order entered September 20, 2017, the supreme court denied leave to appeal. (Mich. Ord., ECF No. 6-18, PageID.681.) This petition followed.

## II.     AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an

---

[1] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

4

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Ineffective assistance of trial counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466

U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals addressed Petitioner's ineffective assistance of counsel claims under the following standard:

> To show that defense counsel was ineffective and to be afforded a new trial, a defendant must establish (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the defendant was prejudiced as a result of counsel's performance. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). A prejudice showing means that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.*, quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). There is a strong presumption that counsel rendered adequate assistance. *Id.* at 670.

(Mich. Ct. App. Op., ECF No. 6-19, PageID.773.) Although the court cited state authority, the standard it applied was functionally identical to, and indeed derived from, the *Strickland* standard. Accordingly, it cannot be argued that the Court applied a standard contrary to clearly established federal law. The only question that remains is whether the state court applied the standard reasonably.

### A. Counsel failed to challenge the substance of the expert's testimony

The prosecution's expert, Dr. Stephen Guertin, testified that his physical findings upon examining the victim supported her claims that she had been vaginally penetrated. The court of appeals described this testimony as follows:

> Guertin, who was qualified as an expert in the area of diagnosis and treatment of child sexual abuse, evaluated HH in June 2014. During his physical examination of HH, Guertin found that she had a "deep notch" in her "private area," which he explained was consistent with peni[le]/vaginal intercourse at age 12. He also testified that HH's hymenal opening was "in excess of 25 millimeters or 2.5 centimeters." Guertin said that "if you look at the literature," such a measurement "is not seen in kids unless they are sexually experienced or have suffered intrusive injury." He noted that although neither of these findings alone definitively support the allegations of penile/vaginal intercourse, the presence of both does. However, Guertin acknowledged, "most experts don't use hymenal openings" when evaluating for sexual abuse.

(Mich. Ct. App. Op., ECF No. 6-19, PageID.773.) Although the Court must presume that the findings of fact by the court of appeals are correct, those findings must be reasonable based on the record. The court of appeals overstates Dr. Guertin's testimony when it reports that Guertin testified that a hymenal notch accompanied by a hymenal opening in excess of 2.5 centimeters definitively supports the allegation of penile/vaginal intercourse.

Dr. Guertin testified that both a hymenal notch and a hymenal opening beyond a particular size can support a claim of child sexual abuse. Dr. Guertin acknowledged that neither is absolute nor are they absolute in combination. Dr. Guertin never used the terms "definitive" or "conclusive." Nonetheless, Dr. Guertin did conclude that "the presence of a deep notch, as well as markedly a wide opening, both support her history of penile/vaginal intercourse, consistent with her description of bleeding at the time of the first intercourse." (Trial Tr. III, ECF No. 6-12, PageID.374.) As Dr. Guertin described it, "[i]f I have two supports, it's usually better than one." (*Id.*, PageID.376.)

Petitioner contends that counsel was ineffective for not challenging Dr. Guertin with studies that reach different conclusions with regard to the significance of a hymenal notch or the size of the hymenal opening. Defense counsel did not use any such studies; but counsel elicited testimony from Dr. Guertin that something other than a penis could cause expansion to the hymenal opening or notches, such as an accidental injury. (*Id.*, PageID.374-375.) He also elicited testimony that the notch could have been caused before puberty—which also meant before any claim of penile/vaginal intercourse—and to acknowledge that that the size of the hymenal opening is not used as proof of sexual abuse. (*Id.*, PageID.375-376.)

The Michigan Court of Appeals recognized counsel's efforts to call Dr. Guertin's conclusions into question:

> Defendant also argues that counsel should have more effectively questioned Guertin regarding his conclusion that HH's physical condition evidenced her description of penile/vaginal assault at age 12, given evidence that she suffered a prepubescent fall on the monkey bars and had used tampons. However, trial counsel did elicit testimony from Guertin that the notch could have been caused by a prepubescent injury. Trial counsel also highlighted this point during closing arguments, stating, "But I know one thing Doctor Guertin said. He said the notch that he found could have happened before she was 12, before she started menstruation. And it could have happened when she fell as a child." Defense counsel employed a reasonably sound strategy in choosing to confront Guertin on certain perceived weaknesses in his testimony.[2]
>
> [2] We also note that trial counsel sought to exclude Guertin's testimony pretrial with a motion in limine.

(Mich. Ct. App. Op., ECF No. 6-19, PageID.774.)

Moreover, the appellate court also concluded that counsel's defense strategy did not depend on discrediting Dr. Guertin's conclusion that the physical examination supported a claim that HH had been the victim of penile/vaginal intercourse. According to the court of appeals:

8

> A primary focus of defendant's theory of defense was that Medina[2] actually abused HH, a suggestion that is consistent with Guertin's testimony that HH exhibited physical signs of sexual abuse. Counsel questioned HH and her mother about Medina, and both acknowledged that HH spent time at her grandmother's house while Medina was present. HH's mother testified that Medina was a convicted sex offender who had abused at least two of HH's cousins. Counsel also questioned Detective Harrison about Medina's connection to HH and about Harrison's investigation—or, rather, what counsel portrayed as a lack of an investigation—into Medina. Thus, instead of choosing to discredit Guertin's opinion that HH's physical condition supports a finding of sexual abuse, defense counsel chose to accept that opinion and construct a narrative in which someone else with access to HH was the abuser. The decision to argue one defense instead of another is a matter of trial strategy. *People v Lloyd*, 459 Mich 433, 449; 590 NW2d 738 (1999); *People v Hedelsky*, 162 Mich App 382, 387; 412 NW2d 746 (1987).

(Mich. Ct. App. Op., ECF No. 6-19, PageID.772.)

Because of the doubly deferential standard, this Court's review is limited to determining "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102). In *Harrington*, the issue was whether counsel could have reasonably decided ***not*** to consult a blood expert. The *Harrington* court did not evaluate counsel's decision based on the reasons offered by counsel. Indeed, it does not appear that there was ever a hearing that disclosed counsel's motivation for his decision. Instead, the *Harrington* court considered the reasonableness of the decision in the abstract. That approach necessarily follows from *Strickland*'s requirement that, to overcome the presumption of regularity, the defendant must show that the

---

[2] "Medina was a man who lived with HH's grandmother during a time when HH spent a significant amount of time at her grandmother's house. According to HH's mother, Medina had been arrested for molesting HH's cousins. HH testified that Medina never assaulted her." (Mich. Ct. App. Op., ECF No. 6-19, PageId.772.)

9

challenged action ***cannot*** be considered sound trial strategy. If the reviewing state court can conceive of a sound strategy that includes the challenged action, the matter is resolved.[3]

The reviewing court has identified just such a strategy here. Counsel's closing argument demonstrates that the strategy was purposeful. (Trial Tr. V, ECF No. 6-15, PageID.598-607.) Counsel mentioned Dan Medina's name again and again during the closing. Moreover, counsel's strategy had an impact. The jury had deliberated for less than an hour when the jurors sent out a question: "Would the facts from the Dan Medina conviction have been admissible in this case?" (*Id.*, PageID.615-616.) The court told the jurors "no." They continued to deliberate for four hours after that answer. (Trial Tr. VI, ECF No. 6-14, PageID.592.)

The fact that the strategy was unsuccessful does not mean that counsel's pursuit of it was professionally unreasonable. The court of appeals concluded that counsel's strategy was

---

[3] Petitioner suggests that the Court cannot resolve this issue without conducting an evidentiary hearing to inquire into counsel's actual motivation. That is incorrect. *Harrington* reversed a Ninth Circuit *en banc* decision. The *Harrington* court criticized the Ninth Circuit for limiting its inquiry to counsel's actual thinking:

> The Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking. Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, Wiggins, supra, at 526–527, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam). After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind. 466 U.S., at 688.

*Harrington*, 562 U.S. at 109-10. Under that reasoning, unless Petitioner shows the Michigan Court of Appeals that its proposed strategic reason for the challenged action was, in fact, not the reason for counsel's action, the habeas court does not need to inquire any further into counsel's actual reason for his or her action (or inaction). Therefore, in Petitioner's case, we do not need to determine counsel's actual reasoning to resolve the ineffective assistance claim.

10

"reasonably sound." (Mich. Ct. App. Op., ECF NO. 6-19, PageID.774.) This Court agrees. The fact that Petitioner disagrees with that strategy now will not support a claim of ineffective assistance. *Strickland*, 466 U.S. at 689.

### B. Counsel failed to object to Dr. Guertin's recounting of the victim's statements to him as hearsay

Under the Michigan Court Rules hearsay testimony is generally inadmissible to prove the truth of the matter asserted in the out-of-court statement. There are exceptions, of course, including an exception for "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history . . . ." Mich. R. Evid. 803(4). The statements Petitioner's victim made to Dr. Guertin were presumably admitted under that exception. Defense counsel, however, never objected to the testimony as hearsay.

The Michigan appellate courts have reached varying conclusions regarding whether and under what circumstances statements made to a medical examiner such as Dr. Guertin fit within the exception. Indeed, one can trace the shifts in the law on this issue looking only at cases involving Dr. Guertin.[4] In Petitioner's case, however, the court of appeals concluded that Dr.

---

[4] In *People v. Shaw*, 892 N.W.2d 15 (Mich. Ct. App. 2016), a case relied upon by the court of appeals in Petitioner's case, the court concluded the out-of-court statements of the victim offered by Dr. Guertin were not made for the purpose of medical treatment or diagnosis and, therefore, were inadmissible. In *People v. Uribe*, No. 338586, 2019 WL 97134, at *7-8 (Mich. Ct. App. Jan. 3, 2019), the court concluded the out-of-court statement of the victim offered by Dr. Guertin were made for the purpose of medical treatment and diagnosis and, therefore, were admissible. Petitioner's case is much more factually similar to *Uribe* than *Shaw*. The Michigan Supreme Court has scheduled oral argument on the defendant's application for leave to appeal in *Uribe* on issues including "whether Dr. Guertin's testimony about the complainant's statements to him was admissible under the medical treatment exception to the hearsay rule . . . ." *People v. Uribe*, 941 N.W.2d 381 (Mich. 2020).

*Uribe* and *Shaw*, however, are just the tip of the iceberg with regard to recent cases that consider whether Dr. Guertin's recounting of a victim's statements is inadmissible hearsay. In *People v. Smith*, No. 334692, 2020 WL 1330334 (Mich. Ct. App. Mar. 19, 2020), the defendant raised the same issues regarding the testimony of Dr. Guertin (and Detective Harrison) that Petitioner raises here. Two judges on the three-judge panel concluded that Dr. Guertin's testimony was admissible,

Guertin's testimony regarding the victim's statements to him during the interview was inadmissible hearsay. Nonetheless, the appellate court also concluded that the error was harmless and, accordingly, Petitioner could not demonstrate the prejudice necessary to establish an ineffective assistance of counsel claim:

> To show prejudice, a defendant must establish that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.*, quoting *Strickland*, 466 US at 694. Even absent the admission of the hearsay testimony, the result of the proceeding would not have been different. As our Supreme Court stated in *People v Douglas*, 496 Mich 557, 581; 852 NW2d 587 (2014), where "there is other evidence to corroborate the allegations beyond the declarant's statements," "such cumulative hearsay testimony is more likely to be harmless." Such evidence is present here.

---

one judge in dissent concluded that it was not. In *People v. Gomez*, No. 337160, 2018 WL 1881446 (Mich. Ct. App. 2018), the court determined that Dr. Guertin's recounting of the victim's interview statements was hearsay, but admissible under the medical treatment exception. In *People v. Degner*, No. 327025, 2016 WL 3344503 (Mich. Ct. App. June 14, 2016), the court concluded that Dr. Guertin could testify regarding the statements of the children under the medical treatment habeas exception. In *People v. Qureshi*, No. 323247, 2016 WL 56836 (Mich. Ct. App. Jan. 5, 2016), another case involving Dr. Guertin and Detective Harrison, the court concluded the statements were not offered for medical treatment and, therefore, were inadmissible hearsay. In *In re Ewing*, Nos. 313313, 313315, 2013 WL 1920683 (Mich. Ct. App. May 9, 2013), the court permitted Dr. Guertin's testimony regarding the victims' statements under the medical treatment hearsay exception. In *People v. Wood*, No. 289901, 2010 WL 2925369 (Mich. Ct. App. Jul. 27, 2010), the court concluded that the statements from the two complainants to Dr. Guertin were made for purposes of medical treatment and, therefore, Dr. Guertin could testify regarding the statements. In *People v. Furgala*, No. 256440, 2005 WL 3077206 (Mich. Ct. App. Nov. 17, 2005), the court determined that the statements made to Dr. Guertin by the complainant were made for purposes of medical treatment and, therefore, admissible. In *People v. VanLandingham*, No. 241311, 2003 WL 22850027 (Mich. Ct. App. Dec. 2, 2003), the defendant sought to introduce the statements of the complainant to Dr. Guertin to show that they were inconsistent with other testimony and statements. The court had already determined, however, that the examination was done for purposes of litigation, not medical treatment, and the statements were, therefore inadmissible hearsay. In *People v. Carpenter*, No. 212032, 2000 WL 33400221 (Mich. Ct. App. Nov. 21, 2000), the court permitted Dr. Guertin's testimony regarding the victim's statements under the medical treatment hearsay exception.

The cases cited above are just a few of the dozens of Michigan appellate cases addressing Dr. Guertin's testimony. In many others, it is apparent that Dr. Guertin was permitted to testify regarding the victim's statements but the appellate court did not discuss the hearsay implications of that testimony.

(Mich. Ct. App. Op., ECF No. 6-19, PageID.777.)

Was the court of appeals' determination that Guertin's hearsay testimony was not prejudicial because it was cumulative of other evidence contrary to, or an unreasonable application of clearly established federal law?  In *Wong v. Belmontes*, 558 U.S. 15 (2009), the Supreme Court concluded that adding cumulative evidence to what was already there "would have made little difference" such that Belmontes could not "establish *Strickland* prejudice." *Wong*, 558 U.S. at 22. Just a few days ago, the Sixth Circuit assessed whether the introduction of cumulative evidence could be considered prejudicial in *England v. Hart*, __ F. 3d __, 2020 WL 4745579 (6th Cir. Aug. 17, 2020), stating:

> Next, England argues that the affidavit was corroborative, rather than cumulative, of the aspects of the Woodfork statements that the prosecution relied on. "[E]vidence that is merely cumulative of that already presented does not . . . establish prejudice." *Getsy v. Mitchell*, 495 F.3d 295, 313 (6th Cir. 2007) (en banc) (quoting *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006)).  Determining what constitutes cumulative evidence can be difficult, as "[o]ur cases . . . do not tell us clearly when evidence becomes sufficiently different to no longer be 'cumulative' or at what level of generality one must compare the evidence." *Vasquez v. Bradshaw*, 345 F. App'x 104, 120 (6th Cir. 2009).  Our most frequent formulation of the standard is that "new evidence" is not cumulative if it "differs both in strength and subject matter from the evidence actually presented at [trial]." *Goodwin v. Johnson*, 632 F.3d 301, 327 (6th Cir. 2011).

*England*, 2020 WL 4745579, at *9.[5]  Under the *England* standard, Guertin's recounting of the victim's report to him was plainly cumulative.  It did not differ in "strength" or "subject matter"

---

[5] The Sixth Circuit has found the court of appeals' reasoning persuasive in multiple cases.  *See, i.e., Barnes v. Warden, Ross Corr. Inst.,* No. 19-3389, 2019 WL 5576345, at *2 (6th Cir. Sept. 16, 2019) ("Review of the record confirms that Andrews's testimony—whether hearsay or not—was cumulative to Martin's own testimony about the incident.  Even assuming the testimony did amount to hearsay, Barnes cannot make a substantial showing that counsel's failure to object resulted in prejudice."); *Dobbs v. Trierweiler,* No. 16-2209, 2017 WL 3725349, at *2 (6th Cir. Apr. 7, 2017) ("[T]he testimony as cumulative with regard to the second shooting . . . [a]nd because the testimony was harmless, Dobbs could not show that his attorney's failure to object to it was objectively unreasonable or that prejudice resulted."); *Thurmond v. Carlton*, 489 F. App'x 834, 842 (6th Cir. 2012) ("Because Baxter's [hearsay] testimony was cumulative to the victim's, the lack of an objection (likely to be sustained) did not prejudice the defense."); *Anthony v. DeWitt*,

from the victim's trial testimony and there was nothing about the timing or circumstance of the disclosures to Guertin that lent any meaningful corroborative value to the testimony. Therefore, the undersigned concludes that the "hearsay" testimony here did not make a difference sufficient to establish *Strickland* prejudice.

Petitioner does not cite any Supreme Court authority that is contrary to the court of appeals' analysis. Accordingly, Petitioner has failed to show that the state appellate court's resolution of this claim is contrary to, or an unreasonable application of, clearly established federal law.

C.   **Counsel failed to object to Detective Harrison's testimony regarding the ultimate issue of the victim's credibility**

The prosecution's final witness was Detective Annie Harrison. Detective Harrison conducted a forensic interview of the victim at the police station. Detective Harrison informed the jurors that as part of the interview process she considers "alternate hypotheses."[6] (Trial Tr. IV, ECF No. 6-13, PageID.535.) Harrison indicated that one possibility was that the victim was being molested and raped by Petitioner; but, she explored three other hypotheses: "One was an alternate

---

295 F.3d 554, 564 (6th Cir. 2002) ("[A]dmission [of the hearsay statements] would constitute harmless error because of our conclusion that they did not have a substantial and injurious effect or influence in determining the jury's verdict. . . . Prior to Regina Knox's testimony, there was sufficient corroborating testimony from John Knox and Mary Payne describing the events on the evening of Smith's murder, making Regina Knox's hearsay testimony in this regard cumulative. . . . [H]abeas petitioners are not entitled to relief based on trial error unless they can establish that the error resulted in actual prejudice . . . .").

[6] The ruling out of alternate hypotheses is part of the forensic interview process. *See, i.e. In re Willbur*, No. 346275, 2019 WL 2439055, at *2 (Mich. Ct. App. Jun. 9, 2019); *People v. Whitlock*, No. 341560, 2019 WL 2062828, at *7 (Mich. Ct. App. May 9, 2019); *People v. Zacharko*, No. 322221, 2015 WL 9318566, at *3 n.4 (Mich. Ct. App. Dec. 22, 2015); *People v. Chevis*, No. 304358, 2013 WL 5539279, at *10 (Mich. Ct. App. Oct. 8, 2013). The Michigan Court of Appeals has recognized that the interviewer's "testimony regarding alternative hypotheticals that were tested [speaks] more to the quality of the forensic interview than [the interviewee's] credibility." *People v. McBee*, No. 330048, 2017 WL 1929816, at *6 (Mich. Ct. App. May 9, 2017).

14

suspect; the second was a lie by the reporting source which would be the mother. The third was a lie by the child." (*Id.*, PageID.536.)

Harrison then described the interview process and explained how she ruled out the alternate hypotheses. In describing how she ruled out the hypothesis that the victim was lying, Petitioner contends that Detective Harrison was essentially testifying that the victim was telling the truth. (*Id.*, PageID.546-548.) Petitioner claims that such testimony was obviously objectionable and prejudicial and that counsel should have objected.

The Michigan Court of Appeals addressed this issue as follows:

> While it is arguable that the statement of CS and her mother were isolated and a lack of objection could be considered sound trial strategy so as to not draw attention to them, see *Bahoda*, 448 Mich at 287 n 54, the same cannot be said for Harrison's statements. Harrison was allowed to describe in detail and elaborate on why she ruled out one of her alternate hypotheses, i.e., that HH was lying about the abuse. Thus, Harrison was informing the jury why she believes HH is being truthful, an issue that is solely for the jury. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007) ("It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury."). We can discern no reasonable strategic reason that defense counsel failed to lodge an objection during Harrison's elaborative statement (or following the prosecutor's question regarding what Harrison did to explore the possibility that HH was lying).
>
> However, once again prejudice has not been shown. In arguing that counsel's deficient performance affected the outcome of his trial, defendant again misrepresents the evidence in his case as boiling down to only a contest of pure credibility. True, HH was the accuser and consequently an essential witness in this case. However, there was additional physical evidence beyond the verbal allegations that HH was sexually abused. Moreover, defendant acknowledged this evidence by focusing much of his trial strategy around the failure to sufficiently investigate Medina. This was a reasonable defense strategy. Even if defense counsel had objected to the improper statements, it is unlikely that the strategy would have changed.

(Mich. Ct. App. Op., ECF No. 6-19, PageID.778-779.)

The court of appeals' analysis of the reasonableness of counsel's response is somewhat muddled. On the one hand, the court indicates that there was no reasonable strategic

15

reason for counsel to have foregone an objection. On the other hand, the court acknowledges that permitting Harrison to explain her investigation—and thereby displaying her failure to sufficiently investigate Medina—was part of counsel's reasonable defense strategy to point the finger at Medina.

Accepting the appellate court's conclusion that it was professionally unreasonable for counsel ***not*** to object to the testimony, the question remains whether the court's further determination that there was no prejudice was consistent with *Strickland*. Petitioner's argument that the testimony was prejudicial is premised on his contention that the trial was a pure credibility contest. The appellate court rejected that claim of prejudice because—as was the case with Dr. Guertin's hearsay testimony—there was other physical evidence to corroborate the victim's testimony. Harrison's testimony that the forensic interview did not support the hypothesis that the victim was lying was not critical, it was cumulative of the physical evidence and, therefore, did not render the result unreliable. Petitioner does not offer clearly established federal law to the contrary.

Petitioner has failed to demonstrate that the Michigan Court of Appeals' determination that the failure to object to Harrison's testimony was not prejudicial is contrary to, or an unreasonable application of, *Strickland*. Accordingly, he is not entitled to habeas relief on this claim.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: August 31, 2020                                  /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).